ELIAS BURNELL, *Administrator of* MITCHELL RUSSELL *v.* THOMAS MALONY.

*Ejectment.    Acquiescence.    Administrator.    Guardian.    Boundary Line.*

The acquiescence of an administrator or guardian in a mistaken boundary line for the true line, does not bind the heirs or wards while they remain minors. It can have no greater binding force on the rights of a minor than that of any other trustee having the care of the same property.

The case of *McFarland, Adm'r*, v. *Stone*, 17 Vt. 165, is a clear authority in favor of the right of the plaintiff to maintain this action in ejectment as administrator.

There is no difference between the provisions of the existing statute and those of the statute of 1821, in respect to the authority conferred upon an administrator to maintain the action of ejectment.

EJECTMENT for a parcel of land in Highgate. Plea, the general issue, and trial by jury at the April Term, 1863,—ALDIS, J., presiding.

On the trial it appeared that the land in controversy was originally owned by one Wood, and that Mitchell Russell, deceased, (of whose estate the plaintiff was administrator), and the defendant both claimed title to their farms, which adjoined, under said Wood. The land for which the plaintiff claimed to recover in this suit was a strip about twenty rods wide, lying between said farms. In 1833 or 1834, and while one Witters owned the farm now owned by the plaintiff, Witters procured

one Saxe, a surveyor, to run out the line between the two farms, which was afterwards known as the "Saxe line." The defendant's testimony tended to show that the widow and heirs of Mitchell Russell always recognized the "Saxe line" as the true line between the farms, and always occupied up to that line; the testimony of the plaintiff tended to prove that they had not so acquiesced in said line; and also that Mitchell Russell died in 1837, leaving a widow and two young children—that his widow was appointed administratrix on his estate and guardian of the children; that the widow was married to one Herrick in 1840, and continued to reside on said premises with her husband until his death, which occurred a few years ago. Mr Burnell, the plaintiff, was appointed administrator de bonis non of Mitchell Russell's estate, February 4, 1859.

The court charged the jury, in substance, that if the widow of Mitchell Russell, while she was administratrix on his estate and the guardian of the children, and prior to her marriage with Herrick, did acquiesce in the "Saxe line" as the true line, and if she and her husband, Herrick, and all others occupying the land, always afterwards for the period of fifteen years acquiesced in and recognized the "Saxe line" as the true line, then the plaintiff could not recover, although said acquiescence commenced when the heirs were minors. Exceptions by the plaintiff.

L. E. Pelton and H. A. Burt, for the plaintiff, on the question of the acquiescence of administrators and guardians in a mistaken line, cited Wells and wife v. Morse et al., 11 Vt. 9; Cushman v. Jordan, 13 Vt. 597.

This suit was properly brought in the name of the administrator. McFarland, Adm'r, v. Stone, 17 Vt. 166; Austin v. Jordan, 13 Vt. 597; 3 Vt. 207.

H. S. Royce and J. Rand, for the defendant, cited Townsend v. Downer's Estate, 32 Vt. 214; 30 Vt. 405; Hall's Adm'r v. Coventry et al., 4 Vt. 295; Busk v. Squires, 22 Vt. 484.

KELLOGG, J. On the trial of this case in the county court, it was admitted that the plaintiff, as administrator, was entitled

to recover the parcel of land for which this action was brought, unless the defendant, and those under whom he claimed had acquired title to it by acquiescence, and the only point made upon the exceptions relates to the charge of the court in respect to the beginning and continuing of an acquiescence by the guardian of the minor heirs of the intestate in an incorrect division line. The intestate died in the early part of 1837, leaving a widow and two children, a son and daughter, the oldest being then about three years of age. The widow was appointed administratrix of her husband's estate in 1837, and on the 22d of June, 1839, she was appointed guardian for the two children. On the 11th of September, 1840, she married one Herrick, and her authority as administratrix and guardian became thereby extinguished by force of the provisions of the statute. C. S., p. 338, § 14, p. 417, § 58; G. S., p. 387, § 13, p. 485, § 54. Her daughter, who was the oldest of her children, was married, and died in 1857, leaving three children as the issue of her marriage. The plaintiff was appointed administrator *de bonis non* of the intestate on the 4th of February, 1859, and this action was commenced on the 28th of March, 1860. The question presented is, whether the children and heirs of the intestate were bound by the acquiescence of their mother in her representative character, either as their guardian, or as administratrix upon the estate of the intestate, in a mistaken boundary line while they remained minors.

An administrator is the legal representative of the right of his intestate, and a guardian is a trustee for his ward, but neither a guardian nor an administrator has any power to manage, control or dispose of real estate except in the manner provided by law. Neither can sell or convey such estate without a license from the probate court, and the regulations under which such licenses are granted evince the [jealous care with which the rights of minors and of all others interested in the property are protected. The chief duty of an administrator or guardian in respect to real estate is to take care of the property; but this duty will not authorize any alienation or transfer of the title except in a manner authorized by law. The interests of minors are specially

protected by a great variety of statute provisions. They are not affected by the statutes of limitation, and the policy of the statute provisions in their favor excludes the idea that their interest in real estate can be conveyed or affected in any other manner than such as is authorized by the statute. The protection which the law extends over the interests of a minor would be ineffectual if he was considered as bound to any greater extent by the acquiescence of his guardian than he would be by the guardian's negligence or omission of duty. If infancy is a shield against the accruing of a right by adverse possession, it should be equally a defence against any interference with the title not recongnized or authorized by the statute. As the authority of an administrator or guardian is conferred by law, it should receive a strict construction, and, as they are without interest in the property entrusted to their care, no act or omission of theirs ought to affect the right which they may represent. The acquiescence of an administrator or guardian could have no greater binding force on the right of a minor than that of any other trustee having the care of the same property. If the acquiescence of a party having no interest in the estate but that of a mere custodian and trustee should be permitted to affect the right of the real owner, it would introduce a new form of conveyance into the law of real property not authorized by the statute nor recognized by any adjudged case. The most unequivocal act of acquiescence should be considered as binding only upon the party whose act it is, or who authorized it. The right of the heirs of Mitchell Russell was not, as we think, affected by any act of acquiescence in a mistaken boundary line for the true line by their mother, acting in the character of administratrix or in that of guardian, or by Herrick, who was not only a stranger to the title but was without any interest in it. This conclusion necessarily leads to a reversal of the judgment of the county court.

But the defendant claims that this action is not properly brought in the name of the plaintiff as administrator, and that it should have been brought in the name of the heirs of the intestate, and that as, for this reason, the same judgment must be rendered which was rendered in the county court, that judg-

ment ought not to be reversed. It was held in *McFarland, Adm'r,* v. *Stone,* 17 Vt. 165, that an administrator may maintain an action for the recovery of the possession of real estate for the use of the heirs until after a decree of assignment or distribution of the estate has been made by the probate court, but that this right depends on the continuing right of the heir, and that the administrator can only recover in such case *according to the rights of the heirs at the commencement of the action.* The statute authorizes the administrator to commence in the right of the deceased any action or suit in law or equity which by law survives to the administrator, which shall be necessary for the recovery and protection of the property or rights of the deceased, and to prosecute any such suit which shall have been commenced in the life time of the deceased. C. S., p. 341 § 9 ; G. S., p. 390, § 9. The action of ejectment is one which by statute survives to the administrator. The authority conferred by the statute upon the administrator to maintain the action is ample and unqualified, and the administrator is the proper legal representative of his intestate, and represents the entire right of his inestate. The statutes of 1797, and 1821, both expressly gave authority to the administrator to commence the action, or to prosecute an action already commenced by the intestate, " to the use of the devisees, heirs or creditors of such estate, as the case may be ; " and the statute of 1821 prohibited the heirs from maintaining the action until a decree of assignment or distribution, &c., and this provision is contained in the existing statute. C. S., p. 341, § 11 ; G. S., p. 391, § 14. There is no difference between the provisions of the existing statute and those of the statute of 1821, except that the words declaring the use to which the action shall be brought,—" to the use of the devisees, heirs, or creditors of such estate, &c.,"—were omitted in the Revised Statutes of 1839, under which this action was commenced ; and the provisions of the Revised Statutes of 1839 on this subject are the same which are contained in the existing statute. The omission of those words in the Revised Statutes was not intended to affect or change the law as it previously existed, because the action of ejectment, when brought by an administrator, must,

always and under any circumstances, be for the use of the devisees, heirs, or creditors of the estate; and it is incorrect to say that the case of *McFarland, Adm'r,* v. *Stone* was put on the fact that the action was commenced while the statute which contained these omitted words was in force.   On the contrary, the plaintiff in that case, as the reported case shows, did not take his letters of administration until February, 1841, and consequently the action must have been commenced after the Revised Statutes of 1839 went into effect. The case of *McFarland, Adm'r,* v. *Stone,* thus appears to be a clear authority in the favor of the right of the plaintiff to maintain this action as the administrator of Mitchell Russell; and this point which was decided in that case was re-affirmed by this court, on full argument, in the case of *Executor of Austin* v. *Briggs et al.,* Rutland County, February Term, 1855, not reported, and the same principle was also recognized in *Roberts, Adm'r,* v. *Morgan,* 30 Vt. 319–329.

The judgment of the county court for the defendant is reversed, and a new trial is granted.