No. 30.—*Doe ex. dem.* EDWARD M. PENDERGRAST and others, *vs.* GEORGE W. GULLATT and RICHARD PRATHER, defendants.

[1.] Possession of land under color of *paper* title, is not, indispensably, necessary to protect the tenant, under the Statute of Limitations.

[2] A defendant in ejectment may protect his possession under the Statute of Limitations, under a parol contract, especially if the purchase money has been paid, and possession given.

[3.] It is no error in the Court to refuse to charge as asked, provided the insructions called for are not authorized by the evidence exhibited on the trial, and are applicable to a different state of facts.

[4.] The saving clause in the Act of Limitations, in behalf of infants, may preserve the right of one of several co-heirs, who is within the proviso,

although the other co-heirs, who are under no disability, will be bound Therefore, in ejectment by two co-heirs, upon a joint demise, one of whom is free from disability, but the other, under infancy, judgment may be rendered against the plaintiff, upon the title of the one under no disability, and in his favor, upon the title of the infant.

Ejectment, in Harris Superior Court. Tried before Judge IVERSON, March Term, 1851.

This was an action of ejectment, brought by Edward W. Pendergrast and Joseph Reilly and Julia Ann Reilly, formerly Julia Ann Pendergrast, as the heirs general of Patrick Pendergrast, deceased, for lot of land, No. 132, in the 18th district, of originally Muscogee. The land was granted to Patrick Pendergrast, in the year 1827. Patrick Pendergrast died in Ireland, in 1830. The defendants relied upon the Statute of Limitations. The plaintiffs insisted that suit was brought within seven years after their arrival of age. It is unnecessary to repeat here all the evidence introduced, touching the age of the plaintiffs.

The plaintiffs offered in evidence the depositions of Moses Jones, moving at the same time to withhold from the Jury the following clauses: "Richard Prather purchased it (the land) of a Mr. Alford, in the fall of the year, 1828, witness thought in November, having given his notes for $1150." The Court overruled the motion, and this is the first error assigned.

The plaintiffs offered in evidence the following certificate :

"I hereby certify that Edward Pendergrast, born of Patrick Pendergrast and Mary his wife, (formerly Fleming,) was baptised by the Rev. P. Bulger, according to the rites of Holy Roman Catholic Church, and that said Edward Pendergrast was born 19th August, 1821.

(Signed) JOHN POWER, *Vic. Gen'l and Rec. of St. Pet. Ch.*

A true extract from the Church Register, New York, January 23, 1844. (Signed) CHARLES E. BENSON, *Cl'k. St. Pt.*

To which certificate was attached the following affidavit, taken before John Bissell, commissioner for the State of Georgia, in New York City. George C. Collins sworn, says that he saw

the Reverend John Power, Vicar General and Rector of St. Peters' Church in said City, sign the above certificate, after carefully examining the same, and comparing it with the record book of said Church, and that he also saw Charles E. Benson, Clerk of said Church, sign the last of said certificates, after like examination, and that deponent also carefully compared the certificate so given by said John Power, with the original ʹentry in said record book or church register, and finds the same correct and true.

Defendants objected to the certificate and affidavit going in evidence. The objection was sustained, and this decision is assigned as error.

The defendants introduced no paper title, but relied upon possession, under claim of title; one of the witnesses for plaintiff having stated that Prather took possession in November, 1838, and had indirectly had possession of said lot, until 25th Dec. 1848, when Gullatt took possession; that when Prather took possession, there was a small piece of land cleared; that he cleared some four or five acres more, and cultivated it in the year 1839, and continued annually to clear until 1845, up to which time he had cleared about 50 acres; that Prather held possession individually in his own right, during each year, from 1839, to 25th Dec. 1848, when Gullatt took possession; that there was fifty acres cleared, and that it had usually been rented from 1845, for about a bale of cotton, weighing 500 lbs.

The plaintiffs asked the Court to charge,

1st. That the title of Prather, if a trespasser, in order to bar the rights of plaintiff, must have continued *seven years in himself*, from the time that the plaintiffs arrived at age, and must have so continued at the commencement of the plaintiff's suit.

2d. That the several possessions of Prather, Gullatt and Burdett, cannot be united together, if they were trespassers, so as to create title by possession; and even if Prather had possession for *seven years,* and had given up said possession to either of the others, such possession cannot be relied on, to sustain the Statute of Limitations.

3. That the infancy of both plaintiffs must have been removed

before the Statute of Limitations commenced to run against either, in favor of the trespasser.

4. That if E. M. Pendergrast was an infant in 1838, when Prather, a trespasser, went into possession, and continued so until 1841 or 1842, his right was not barred until 7 years' actual possession in one tenant after arrival at full age, and that tenant also the defendant sued.

5. That the Statute must be so construed and administered as to extend advantages to infants.

The Court declined so to charge, but instructed the Jury, "That if Prather purchased the land, and held actual possession of it for 7 years next before the commencement of the suit, or if he held it for a while, and then sold it to another, who took possession and held it for the rest of the time, the length of these possessions, (being continuous) when added together, made seven years; that the defendants had a good title under the Statute, unless as far as Edward Pendergrast was concerned, it appeared that he came of age within the said 7 years; and so far as Reilly and wife were concerned, that Mrs. Reilly arrived at age within that time, or being under that age, had married Reilly within that period; in which events the plaintiffs were not barred by the Statute, nor the defendants protected."

Error is now assigned upon the refusal of the Court to charge and upon the charge as given.

H. HOLT, for plaintiffs in error.

H. L. BENNING, for defendants.

*By the Court.*—LUMPKIN J., delivering the opinion.

[1.] The first question presented for our consideration is, whether the Court erred in admitting the testimony of Moses Jones?

This witness testified, among other things, that he knew the land in dispute, lot No. 132, in the 18th district, of originally Muscogee, now Harris County, and that Richard Prather, the tenant in possession, purchased it of a Mr. Alford, in the fall of

the year 1838, he thought in the month of November of that year, and took possession thereof, having given his note in payment, for $1150.

It is asserted that it was not competent for the defendant to protect his possession, under the plea of the Statute of Limitations, by proof of a *parol purchase.*

It does not appear from the evidence, that the contract between Prather and Alford was ever reduced to writing.

In *English vs. Register and others,* 7 *Geo. Rep.* 387, this Court held, my brother *Warner* delivering the opinion, "that possession under color of *paper* title, was not indispensably necessary to protect a party in the possession of land under the Statute of Limitations. That a party may acquire a title under the Statute, as against the true owner, by *possession,* accompanied by such *acts* of *ownership* and dominion over the premises, as in law, would amount to a *disuser* and *ouster* of such true owner, to the extent of such possession."

And again, " when the possession of a tract of land in this State is *usurped* by one having no *paper* title, and such possessor exercises dominion over it by visible and notorious acts of *ownership,* cultivating and improving it, as owners usually do, such visible and notorious acts of ownership will in law amount to a *disuser* and *ouster* of the possession of the true owner; and if continued for seven years, will bar the right of action of the true owner." (*Ibid.*)

[2.] This Court is not therefore, only fully and *unanimously* committed to the doctrine that a *paper* title is not indispensably necessary to protect a party in this State in the possession of land, under the plea of the Statute of Limitations, and that a *parol* contract of purchase may be set up by the tenant to defend his possession; but that even a *usurpation* of the possession, provided the occupancy be accompanied by visible and notorious acts of ownership, is sufficient for that purpose. Beyond this, I am not aware that *any* member of this Court has gone. But I will go further: Prather having bought the land and paid for it, and gone into possession, his contract would be valid under the Statute of

Pendergrast *et al. vs.* Gullatt and another.

Frauds, and a specific performance would be decreed.   2 *Story's Eq. Jur.* §761, and the authorities cited in the note.

The plaintiffs asked the Court to charge the Jury:

1st.  That the title of Prather, *if a trespasser,* in  order to bar the right of the plaintiffs, must have continued seven years in himself from the time that the plaintiffs arrived at age, and must still have so continued at the commencement of the plaintiff's suit.

2nd.  That the several possessions of Prather, Gullatt and Burdett, if the Jury believed from the evidence, that they severally had such possessions, cannot be counted together, *if they were trespassers,* so as to create a possessory title by the lapse of seven years, in either of them, and that even if Prather had continued seven years in possession, and had given up said possession to either of the others, as tenants or otherwise, such possession cannot be relied on to sustain the Statute of Limitations.

[3.]  I consider that the instructions asked were improper, and therefore rightfully refused : because the evidence exhibited did not warrant such a charge.   They are predicated upon the assumption that Prather and those claiming under him, were *trespassers ;* whereas, there is not only no testimony to warrant such an idea, but the proof shows that they held *by contract.*   Moses Jones, after stating the purchase from Alford by Prather, further swears that he continued in possession " individually in his own right, from 1839, to 1848,  making  annual clearings ; and that on the 25th of December, 1848,  he  was succeeded by Gullatt, who took possession *under purchase*; that  Gullatt became dissatisfied with his trade and  cancelled it,  continuing thereon as the tenant of Prather, in the  occupancy of  the premises during the year 1849.

The instructions called for, applied to a different state of facts from these.   Besides, they were inapplicable, in another view of the testimony.

Suit was commenced for this land by the present plaintiffs, on the 6th of August, 1846, against one Burdett; and Prather was made a co-defendant.   At September Term, 1848,  there  was a judgment of non-suit in the case ; and within  six  months after-

wards, the present action was instituted. But Prather having himself been in possession from 1838 to 1846, eight years, the question of coupling together the possession of different trespassers, does not and cannot arise.

3rd. The rejection by the Court, of the certificate of birth and baptism, is assigned as error in the pleadings; it seems however, to have been waived on the argument. We shall only repeat then, what is said in the brief of counsel for the defendant in error, on this point, "that we know of no law of the State of New York, which authorizes officials of the "Holy Catholic Church," to register births and baptisms, and which makes such registry evidence of the fact." None such has been produced, and there is no such Statute in this State.

[4.] Another ground taken in the argument, by counsel for the plaintiff in error, is the refusal by the Court to charge the Jury that the infancy of both of the plaintiffs must have been removed before the Statute of Limitations commenced to run against either. In *Jordan vs. Thornton and others,* 7 *Geo. Rep.* 517, this Court held, that if one of two be barred, and the other within the exception to the Statute, his exemption will not relieve against the operation of the Statute, as to the one barred. It is true, that this was an action of trover, to recover slaves, but real and personal estate are put upon the same footing.

Each individual lessor might have brought an ejectment to recover his own share, without the necessity of joining the other; for as tenants in common, they hold several titles, or rather by one title and several rights. Even in the case of coparceners who constitute but one heir, one may on her own demise, recover her own share, and so of the sole demise of a joint tenant to the plaintiff in ejectment, for that severs the joint tenancy and entitles to a recovery for the lessor's proportion. (*Doe Ex. demise of Bowyer vs. Judge,* 11 *East.* 287.)

Where many have a joint right of entry, and one enters, his entry enures to the joint benefit of all; if there is a joint *title,* and some have lost their right of entry, he who enters, does it for the benefit of those whose entry is congeable. It follows, that if all have lost the right of entry but the one who enters, he

Pendergrast *et al. vs.* Gullatt and another,

enters solely for his own benefit, and becomes tenant in common with those who have acquired an estate in the land, by possession or otherwise.

The Circuit Court was right, therefore, in refusing to give the charge, as asked.

The last position assumed by counsel for plaintiff in error, is equally untenable, namely, that the Court declined to construe and administer the Statute of Limitations favorably to infants.

Our learned brother gave them the benefit of *seven years* limitations, both on the score of *infancy* and *coverture,* after the disability was removed.   For he charged the Jury in *totidem verbis,* "that if either Edward M. Pendergrast or his sister came of age, within *seven* years next preceding the commencement of the action; or that if Julia Ann Pendergrast, being under age, had intermarried with Philip Reilly within that time, that then, the Statute of Limitations could not affect the one so coming of age or intermarrying as aforesaid."

Whereas by the Acts of 1767 and 1817, these parties were entitled to *three* years only after the disabilities of infancy and coverture were respectively removed.   Instead of excepting to the charge as prejudicial to the plaintiffs, the complaint should have been to the verdict of the Jury, as being contrary to the charge of the Court.

We are of the opinion that this case has been properly decided, and that the judgment be affirmed.

*Per Curiam.*—Judgment affirmed.